We appreciate the argument. Next is the case of United States of America v. Toddrey Bruce. Good morning, Your Honours. May it please the Court, Sarah Kane, Assistant Federal Public Defender on behalf of the appellant Mr. Toddrey Bruce. I would like to start with the question about reasonable articulable suspicion in this case, whether, of course, Mr. Bruce's position is that the officers lacked particularized reasonable articulable suspicion as to- Ms. Kane, before you start- Yes, Your Honour. Can we talk about the conditional plea agreement? We can talk about whatever you want to talk about. Good answer. Well, the question I have is, obviously, your client pled guilty, but as a result of the plea agreement, it was conditioned on this Court being able to review the district court's ruling on the motion to suppress, which the district court denied after an evidentiary hearing. You, in this case, are raising new grounds as a result of the motion to suppress. How are those grounds properly before this Court? Your Honour, our position is that Mr. Bruce moved to suppress his seizure on the basis that it violated the Fourth Amendment, and that Your Honours can reverse on any argument in support of a violation of the Fourth Amendment. But how is that proper? Normally, as we know, issues that are not raised before the district court cannot be raised for the first time here unless, obviously, it's a subject matter jurisdiction or something where you don't waive that. But in this case, my understanding is, obviously, you can raise whatever you choose to raise that were already addressed before the district court. But my understanding is here you're also trying to raise an issue regarding curtilage that was never addressed below. Our position is that the curtilage argument is an argument in support of a claim that was made. How was it made? Because in terms of curtilage, you actually have to raise that and say that there is a privacy interest or the individual has an interest with regards to the curtilage. I think that if the Court finds that the record is insufficient to establish Mr. Bruce's relationship to the property, that actually a remand would be appropriate. Why would that be appropriate? Because curtilage, for example, you had eight and a half pages of closing argument. You never mentioned curtilage. You had two and a half pages of rebuttal closing. You never mentioned curtilage. Counsel for the government did address in direct examination the fact that the car was located in the lawn of this property. We have no idea whose property it is because that was never addressed and that was never brought up. That wasn't raised in the motion and it wasn't raised in the hearing. Again, why should we give your client another opportunity to go before Judge Scola to address this when this was never raised? Your Honor, we did raise that the officers needed probable cause. Probable cause is different. I just want to address the curtilage because it's either waive or we can talk about plain error. I want to have a discussion about why we should even look at this issue. Sure. The District Court in its denial of intrusion that was involved in the seizure of Mr. Bruce. Who did this again? The District Court in the District Court's order denying our motion to suppress talked about the factors that distinguish whether the seizure requires probable cause or only reasonable articulable suspicion. One of those factors is the degree of intrusion on the private citizen. Our position is that what the District Court did was not to make a judgment about the degree of intrusion. How can you raise a new argument before this court that the District Court never heard or never considered? Your Honor, I think that, for example, the government brief cited Wei Kung as the primary published opinion about what the court can consider on the basis of what was preserved in a conditional plea. Wei Kung held not any analysis but held that an issue that was not preserved in front of the District Court in the conditional plea cannot be raised. That's just basic Appellate 101. I understand that that's part of that case, but that's Appellate 101. If it's a civil case or a criminal case, if you don't raise an issue below, you can't come here and ask us to consider that issue because the whole point is to allow a trial court judge to make a ruling based on the argument, and then we determine whether or not there's legal error. Understood, Your Honor. However, what I think that Wei Kung should actually stand for is in that case, what the defendant tried to do on appeal was challenge the validity of a search of his rental car. In front of the District Court, he had made a completely separate claim that his arrest was without probable cause. Wei Kung is the published opinion cited by the government here that says Your Honors can't address. I think Wei Kung is a non-published opinion. Obviously, I'll defer to Your Honors. If I may, I think the best you're going to get is plain error. To be candid, at least for my part, I don't think that Collins helps you under plain error in any event. You may want to make arguments about why, under the issues that we clearly do have before us, why your client might prevail. Yes, Your Honor. I would note that I did file a 28-J, that I do think does establish that there was plain error as to the officers needed a probable cause here. Moving on, fully preserved is the question of whether the officers had reasonable or takeable suspicion to stop the occupants of a parked vehicle that were present at a home. What if we have the same facts of this case except the caller says that there's a hostage situation rather than a fight? Very different. That suggests a crime. The caller calls about the observations that the caller here makes do not actually establish a crime. Did the caller not say that there was an altercation between two individuals and they saw a gun? The caller said that there was an argument in the front yard of a home and someone had a gun. I mean, if a police officer receives a call, 911 receives a call that says that there's an altercation between a man and a woman and there's a gun involved, officers all the time routinely go to those calls because it could be a domestic violence dispute, correct? I mean, that's just... There is no question that the officers... Are you saying that that's not an officer can't stop those individuals? Well, there are a couple facts that distinguish this. There is no suggestion that this is a domestic violence incident. There are different rules in a domestic violence setting. Why not? I mean, it could be it's an altercation. How does a police officer know whether it's an altercation that could be two brothers, it could be a same-sex couple? The terms that the caller used were argument and disturbance. I think that's relevant here because it doesn't suggest that they're already physically involved. And also, there's the difference between what the officers received through dispatch, whether there's an argument in the front yard of a car, there's a black man standing next to a white car with a gun in his hand, and the officers get there. And we're not talking about a situation where they see a black man wearing all black. But they get there to the same house that the anonymous caller made to 911 saying there's an altercation between two individuals at this location, and there's a white car. They identified the white car, and they identified the house. They didn't give the license plate, but they did identify the white car. Well, the caller did say there is a white vehicle, but I think the court would be hard-pressed to find a case that said that the statement... At the same location. There is a white vehicle. At this address. Same address. Yes, Your Honor. It means that the white vehicle is in any way involved in the crime or implicated in the crime. In that way, this case is distinguishable from Maverick v. California, from Alabama v. White, and even from Florida v. JL. When the police arrived, they have no particularized suspicion that the occupants of the vehicle in this case, which was in no way connected to the crime, were the same people the caller had called about, and they had no reasonable suspicion that there was an ongoing crime inside of that vehicle. Did this not happen within, like, four to five minutes from receiving the call? The caller called at 319. Dispatch sent out a dispatch at 322 or 323, and the officer's body cam begins at 328. I think that the scene was different when the officers arrived. That is a distinguishing factor, and the scene was different in a way which undermined the reasonable, articulable suspicion. They have to believe that the people inside of that car, and they testified there was no way they could identify them, and there was nothing coming from the car that suggested there was an argument, a fight, there's no yelling, there's no movement in the car, there's no evasive gestures, there's no plain view of a gun. So, in other words, these people inside of the car, which the caller did not connect to the crime. And I think Judge Skoll asked you this question, but I'll ask you as well. So, under the theory that you're giving us, is it your position that because they were no longer outside having a discussion, that the police should have just left and not investigated? No, Your Honor, my answer would be similar to what I told Judge Skoll. Nothing about this case says the officers had to leave. They could do police work. And what would that have been? So, I'd like to draw Your Honor's attention to a case I cited in the reply brief. It's a Seventh Circuit case, United States v. Watson. The site is 900 F. 3rd, 892. That's a 2018 Seventh Circuit case. And in that case, we again had a caller alleging potentially unlawful activity with guns, but in a public place. The caller specifically identified the car that these people were in, so they had more particular suspicion. But the court ultimately found basically the scene when the officers arrived was different than what was called about, dispelled the officer's suspicion, and dispelled the creation potentially of an emergency situation. What about the scene dispelled any concern about the situation? Well, there isn't evidence of an argument, there isn't evidence of a firearm, and there isn't evidence of a shooting. So, those are the things that the caller called about that created a concern, and there's no problem the officers should be, as the court said in Watson, the officers should be responding. Couldn't the officers have been concerned that it had moved to a hostage type of situation? I think that is a hunch. I think that is sort of their, we can allow ourselves to consider all the multiple, maybe there was someone dead in the car, sure. But what the caller observed was a mere argument with a gun in the front yard. That itself does not describe a crime. He said there may be a shooting, which could have been predictive, and the see no evidence of that in that way. You mentioned earlier that there's a different standard, I think, for a domestic violence situation. There's not, obviously, though, a different constitutional standard. I mean, the Constitution applies equally to domestic violence and other situations. It does. Ms. Cain, just to highlight this Watson case, I mean, it is very similar. I think Judge Barrett says, you know, even if the caller's use of 911 made the officers worry, that worry should have dissipated when the officers arrived on the scene, because what the officer saw at that time didn't match the report from the caller. And that's exactly what we had here, wasn't it? Yes, Your Honor. It is a different situation that undermines both the reliability of the doesn't mean officers should leave, just like the court says in Watson. They say it would be appropriate for the police to respond to the home, and then when they get there, they can try to attempt a consensual encounter. There's no Fourth Amendment implication with a consensual encounter, or they can try to make their own observations, or they can wait to see if the car leaves and develop probable cause for a traffic infraction, which, you know, they did none of those things. They immediately jumped out of their cars and seized everyone in the car at gunpoint with no particular suspicion that they were the people that the caller had called about, or that there was a crime ongoing. This is gun possession in a home, in the curtilage of a home. That's not the same. And you have, first of all, where in the record do you have any evidence that this was his home, that he had a possessory interest in this property, or that he had any privacy interest in this property? So, I don't think that in order to establish, to undermine the existence of reasonable suspicion created... But I'm talking about curtilage, because you're saying that he, this is his curtilage, and that he has a right to it. So, tell me where in the record there's evidence of that. Specifically, Your Honor, I was raising that point to point out that what the caller observed did not create reasonable suspicion of a crime, because whatever was happening was happening within the curtilage of a home, and that means that gun possession may not be illegal. It is not the same. But it has to be that person's home, because the Fourth Amendment protects people, not places. It protects people with a reasonable expectation of privacy. And where is his reasonable expectation of privacy in this record? Well, first of all, if we were to just refer to Katz... I'm asking for a record citation, please. I... Your Honor, the record reflects just that this was the curtilage of a home, and that he was a private citizen inside of a parked car. Whose home? The record does not say. Okay, thank you. Right. Thank you. Thank you. Good morning. Good morning, and may it please the Court, Eileen Cannon on behalf of the United States, with me at counsel table is Yenay Hernandez, who represented the government in the district court. If I may start by responding to Judge Lagoa's concerns, there is no evidence in the record that this is curtilage, or that this defendant has a possessory interest in this completely unenclosed driveway. The word curtilage appears nowhere in the district court pleadings, and unsurprisingly, Judge Scola didn't address it, because it was never raised. So in our view, this is clearly outside of this court's review, and shouldn't be addressed, and at a minimum, fails under the plain error standard. I do have a question about that, because as I said, candidly, I'm not sure it impacts this case, but we have to set out a rule that will affect other cases. Why do you think that this issue is completely waived, as opposed to simply a plain error question? Because the nature of this claim is that the officers wouldn't have been lawfully entitled to even pull into this completely open-ended, grassy area, which is what's stipulated in the factual proffer, excuse me. That's an entirely different claim, qualitatively, from the two arguments raised in the district court. Number one being that this was an arrest requiring probable cause, and number two, that alternatively, this was an investigative detention requiring reasonable suspicion. That is very different from the argument that officers would have had to obtain a search warrant, even to pull into that entirely unenclosed area. For that reason, we think it's really far afield from the issues that were litigated, and it would be inappropriate at this stage to engage in that kind of fact-finding exercise to determine whether this is curtilage. In order to make a Terry stop, there's got to be some indication that, I think, quote, criminal activity may be afoot. What was, I mean, start with me from the time the officers arrived. What was the evidence there that there was criminal activity afoot? So the criminal activity here would be engaging in brandishing a firearm. No, no, no. I mean, they drive up. They're two people in a car. What's the evidence of criminal activity? Well, they're responding to a reliable tip, in our opinion. I'm not talking about the call. I'm talking about once they arrive, what they see on the scene. In order to conduct the Terry stop, there's got to be reasonable suspicion. Yes, and we believe that they have that fully because they're responding to an emergency situation. No, you're going back to the call. I mean, they've got to see some suspicion of criminal activity afoot when they arrive. Do you disagree with that? Well, there's no requirement in the law that officers have to corroborate the illegality themselves. I think that principle is clearly dispelled in the Navarette decision when, in that case, in fact, the officers trailed the suspected drunk driver for five minutes and saw no erratic driving, no infractions, and yet, nonetheless, were authorized to conduct a Terry stop because of the reasonable suspicion based on the reliable 911 call and the danger that this driver could escalate and harm others on the road. So the same principle governs here. Is there anything in this record that indicates the caller knew his call was traceable? No, Your Honor, but no such additional requirement is necessary because, as the Supreme Court explained in Navarette, this call was made on the recorded emergency 911 system. As the officers testified at the suppression hearing, numbers are retained in the system. There's no evidence that this caller knew that? There is no. There is no express reference by the caller that he knows his number is being retained, but he's obviously calling 911, and as the Supreme Court explained in Navarette, that system encompasses some built-in tracing and identification features that I think are important because the caller is exposing himself to potential criminal sanction for making a false report, which is a crime in the state of Florida, and although the call ultimately appears to the officer's responding as anonymous, there is testimony in the record that the dispatcher, if he wanted to, could call back the caller using the number. The officer testified that obviously there's two types of 911 calls. You can have a call, Barbara Lagoa calls, and my number is automatically, so the officer can call me back immediately if they want to, or there's an anonymous call, but it's still traceable, but the dispatcher is the one that then has to get the number and then relay it to the officer. That's what the testimony is. Yes, that's correct, Your Honor. So the officer couldn't immediately call because the officer doesn't have the number, but the officer could ask the dispatcher to call the caller, and in that way, what's important is that the caller is readily identifiable, and that adds an additional layer of veracity, which is what the Supreme Court discusses in Navarette. Does it matter, or is there, is this, does the fact that the call is made at 318 and at 328, the police show up, are dispatched to that location? I guess that's when the body cam starts. Does the temporal time, does that matter, the fact that it happens so quickly? Yes, we believe that it does matter, and this is a very close in time response. The call comes in to the exact, at 390- Do you think that eliminates the need for a reasonable suspicion that criminal activity may be afoot? No, Your Honor. Reasonable suspicion still is required, and we believe we have that here because the call is reliable for a number of reasons, starting first with- Is it illegal to possess a firearm on private property in Florida? Well, it's illegal to open carry a firearm- That wasn't my question. Is it illegal to possess a firearm on private property in the state of Florida? I don't know exactly the answer to the private property component, although I can say that the various statutes that are implicated here are 790.53, which prohibits them- I mean, I thought that was a softball question. I mean, you can possess a firearm on private property in Florida without violating the law, right? Well, of course, if you're in your home, but if you're openly displaying a firearm that's displayable to the public, which is what we have here, that's implicating the open carry statute. Oh, so you can only possess a firearm in Florida if you're in your home? I'm not suggesting that, but what I'm saying here is that this individual, who by the way has represented no possessory interest in this property, so we have no support in the record to suggest that he's connected to it, but- Is there any evidence the police officers knew that when they arrived? No, but the point is that he hasn't exhibited a Fourth Amendment interest in this property, and he's waving a gun around during an ongoing argument. The police didn't see that, did they? No, but the caller did, and the caller reported that in an eyewitness fashion to the police. And our precedents say that the police can develop reasonable suspicion of criminal activity by observing exclusively non-criminal activity, correct? Yes, yes, Your Honor. So what was the basis of that in this case? Well, when they approached the scene, the two individuals 45 minutes later were no longer standing outside, and so they were in the vehicle, but the officers knew there were people in the vehicle, the dome light was on, and for officer safety- That's not a crime, sitting in a vehicle with the dome light on. That's correct, but officers don't have to corroborate the illegality themselves. I think that's the key point from Navarette, and nowhere in the law is that requirement of corroboration set forth, and the defendant cites no authority that would require officers to engage in that. Would it have mattered, I'm sorry Ms. Cannon, would it have mattered if when the officer showed up, instead of a white car, it's now a blue car? I think it would. I think it would have potentially reduced the- Yes is a good answer. Yes. And I guess my question is, the evidence is clear in the record that the police showed up to the address that the 911 caller made- That's correct. And identified, the only thing the caller didn't identify was the license plate. That's correct, or the make and model of the car. If the make, other than it was a white car. Correct. But it's a particular address with the car there, and I think that really makes the connection much tighter than just a white vehicle roaming around- Now let me ask you a question, so let's assume that the white car was there, but there were no individuals there. I guess I'll ask this on rebuttal also to your friend on the other side. The car is there, they show up to the location, there's no individuals there. Would the police have been allowed to walk the premises of the home to see what was going on? Yes, Your Honor. We believe that the officers have a duty to respond to these reported emergencies for public safety, and that they did so very reasonably in this case. That's a principle this court has set forth in many cases, including, for example, Holloway, where this court discusses officers' ability and need to be able to respond to these 911 emergencies. And so, yes, in that scenario, they would have been entitled to walk the perimeter to ensure that nobody was being harmed. And in this case, of course, they saw the white vehicle consistent with the call. They saw the exact address consistent with the call. This is the middle of the night in a high-crime area, and in our view, the officers acted eminently reasonable in this very short encounter. You know, Judge Barrett addressed that, the, quote, high-crime area idea in Watson as well. And she says that shouldn't make a difference. People who live in places that have high-crime statistics should not be subject to more intrusive police practices than those who are in wealthy neighborhoods. Do you think that's right, or do you think that's wrong? We think that's right, but we point, this case is not a Watson case. Watson's case... So do you think Watson was rightly decided? I think there's some key distinguishing features, and if I may... But do you think it was rightly decided? And then you can tell me. I think it's a much closer question, and I'm not entirely sure that it was correctly decided, but I think it's not controlling here, even if it were. Why not? Because in that case, the court specifically says, the circumstances in this case did not necessitate an emergency response. The anonymous caller reported no tense situation, like a verbal argument or physical confrontation that suggested violence would erupt. Moreover... But I mean, she definitely distinguishes between, you know, what was said in the call and why that would cause the officer's concern that criminal activity might be afoot. And then says, but when they arrived, that situation didn't exist anymore, so that should have dissipated their worry, and that seems like exactly what we have here. You disagree with that? Yes, Your Honor. Why? Because it's not clear that the emergency has dissipated. There are two people in the car. One could be in a hostage situation. One could be harmed. Officers have no way of corroborating that because, of course, these individuals in the car. So there has been a reported tense situation, an altercation, and I think that really takes this case outside of the Watson model. Didn't the caller in this case even indicate concern that the police should be especially  Yes, Your Honor. In the danger that they were witnessing? Yes, Your Honor, and I think that goes to his role as a concerned citizen who's calling in the middle of the night about something that he's very, very worried about. He even thinks there could be a shooting any minute from now, and there's no indication on this record that that caller was saying anything other than what he was observing in real time, and so for that reason and all the other reasons that support the reliability of the call, plus the surrounding circumstances, including the time of day, the high crime nature of the area, the fact that the officers did corroborate the location and the color of the vehicle, we believe they acted eminently reasonable under the Fourth Amendment, and so we ask this court to affirm the district court's order denying the defendant's motion to suppress. If Your Honors have no further questions . . . I actually do. I just wanted to follow up on this idea that this issue wasn't preserved. Excuse me while I find the plea agreement. The plea agreement says the United States consents to the defendant's entry of a conditional plea of guilty and reservation of the right to seek appellate court review only if the on the grounds that law enforcement, one, lacked reasonable suspicion, or two, probable cause to stop the defendant. Your position is that doesn't allow them to make the arguments they're making here today because . . . Well, it allows them to make their first argument, which is that the officers lacked reasonable suspicion because that was fully and fairly litigated in the district court, but the idea that the defendant possesses a constitutional interest in that unenclosed driveway, which he believes constitutes curtilage, that's the argument we believe is not properly before this court, and under this court's precedent, such as Waikang, where this court has enforced the limits on conditional plea agreements, it wouldn't be appropriate in our view to . . . It's not bound up in the concept of probable cause in your view? No, Your Honors. We believe this notion that the officers couldn't even be there and would have needed a search warrant to even pull up into this open-ended driveway is entirely distinct from the arguments raised below. Are you aware of any case where we've been looking at an issue under the plain error standard and we've remanded for additional factual findings to determine if the party can establish the error that they're claiming? No, Your Honor, and I'm aware of cases that say the opposite. One recently in the MDLEA context specifically said that such fact-finding under plain error would undermine plain error, and so for that additional reason, we don't think it'd be appropriate. What case is that, Ms. Cannon? It's United States versus . . . the first name of the defendant is Trinity, and the last name is escaping me, but I can submit a 20HA with the full name. It's within the last thirty days, and it concerned a potential delay in presentment. I know that. Published opinion from the Eleventh Circuit? Yes, Your Honor. It's United States versus Trinity something. My apologies for not knowing that. You don't know all the cases that vary. If it's any comfort to you, people talk to me about cases that I wrote and I can't remember the names of them, so you're forgiven. Thank you, Your Honor. Thank you for your presentation. I'll go ahead and ask my question, so it won't take up any of your time, because I'm sure you've got things you want to say. In the Watson case, didn't the court specifically find that the caller used a borrowed phone, which would make it difficult to find him, and his sighting of guns did not describe a likely emergency or crime? Yes, those are distinguishable facts. I would say as to the caller using a different phone, the reason it's important that we don't have the caller's phone number and that the officers testified at the hearing here they had no way to get it, they did not know that this caller's number was preserved, is that we don't know . . . Counsel, but that's not true. The testimony from the officer was that the number is preserved, it's just the question of whether or not they could get it, they'd have to call dispatch to get the number, and then dispatch would call them back with the number. Respectfully, Your Honor, when I pressed the Officer Bell in cross-examination and I asked him, do you know the number and can you say for a fact that you can have this number, I believe his answer was no, and the government and their witnesses were on notice since NAVIRT was in 2014, that that was a fact they're supposed to establish, is this number. NAVIRT was based on basically a record that didn't discuss whether the call was traced. The Supreme Court made a bunch of assumptions on the basis of how they believe the 911 system functions nationally, but there is no evidence that the Miami-Dade Police Department . . . there's no facts in the record to establish that this call was traceable. The Officer Bell talked about how he believes the dispatch system works, but when pressed about the facts about this caller . . . We identify numbers are kept. For us, when it's generated, it shows that it's an anonymous caller. They get the call. You can't call basically anonymously. You don't call 911, you're already anonymous. The number is there and you say, I'm giving an anonymous tip. When the call comes to the communication, they have the number and they differentiate. They take the number out when they send it to the police. They do whatever they do to make it anonymous. And in the court, I think it's like caller ID. When someone calls your cell phone, you can see the number. Answer, correct, yes. When someone calls 911, does 911 have a caller ID so that they can see the number that's calling? Answer, yes. That's all I'm trying to say. And do they keep the numbers? Yes, they do. Yes, Your Honor. But when you call 911, if you call the number back, if I need the complainant to step outside, I can have dispatch give me the number. But he didn't do that in this case. And that's relevant. Right, but that's not, you just told me that they didn't have the number, which is completely opposite to what the record says. On cross-examination, I asked him. You are not a 911 dispatcher. What record are you reading? Correct. What page, please? Page 66 of 93 of the suppression hearing. It is page 110 of the appendix from our initial brief. And that is my cross-examination of Officer Bell. I asked him, you are not the 911 dispatcher? He said no. I said, correcting myself, 911 operator, because he had clarified those are actually two separate civilians. You did not see this anonymous caller's phone number at any time. For your argument, is it important that the police officer knows the number or that it's actually traceable so that the caller understands that this is not, you know, them calling with a burner phone where no one can ever identify them? Well, there is no evidence that, whether it was a burner phone or whether it wasn't. But I also asked him, you do not know for a fact that this anonymous caller's number came up to the 911 operator? And he said not for a fact. So this is a question about the government knew. I'd like to know where that is in the record, because I have read this record and it's not there. I only know it because I was there. So can you please supplement the record with that page? Okay. It is page 110 of 138 of the initial brief's appendix. I'm reading the record, the whole transcript. It ends on page 92. 66 of 93 of the transcript. Okay. Your Honors, so moving on, I did want to point out that NAVRIT itself, the district of course acknowledged this was a close call. And it relied on NAVRIT, which was a 5-4 decision that itself said was a close call. And like we argued in the brief, we don't think that NAVRIT can be extended. This would represent an extension of NAVRIT. And the Fourth Amendment risks a death by 1,000 cuts if in every close call, the courts side with the government. Some of those close calls have to come out on the side of a private citizen. Our position is this is one of those cases. If there are no other questions, I will rest. Thank you.